Clark James REDFORD,
Petitioner-Appellant,

v.

Samuel W. SMITH, Respondent-Appellee.

No. 75–1305.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 22, 1976.

Decided Sept. 9, 1976.

James T. Massey, Salt Lake County Bar Legal Services, Inc., Salt Lake City, Utah, for petitioner-appellant.

Robert B. Hansen, Asst. Atty. Gen., Salt Lake City, Utah (Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, Utah, on the brief), for respondent-appellee.

Before LEWIS, Chief Judge, SETH, Circuit Judge, and MORRIS, Chief District Judge.[*]

MORRIS, Chief District Judge.

Clark James Redford is appealing from the district court's order denying him leave to proceed in forma pauperis in presenting his petition for habeas corpus. Redford was convicted of murder in the first degree. He appealed his conviction to the Supreme Court of Utah where it was unanimously affirmed. *State v. Redford*, 27 Utah 2d 379, 496 P.2d 884 (1972). In his petition for habeas corpus he raised in the district court the same four points as were raised in his appeal. The facts as reflected by the Supreme Court of Utah opinion and the order of the district court are as follows:

The murder victim's automobile was seen stalled upon a freeway. Redford was seen talking to her while his own automobile was parked immediately behind her car. Soon thereafter the victim's car was found empty, and sixteen days later her body was found near the only standing house in an old abandoned mining town about 40 or 50 miles away. The victim's shoes were found in another area nearby, and other personal items were found in still another area nearby. The house near which the victim's body was found had belonged to Redford's grandmother, and he was acquainted with the house. Entrance to the house had to be made through a window, and fibers from Redford's sweater were found on the windowsill. The victim had been raped and choked to death.

The night before the victim disappeared, Redford confronted another woman at a laundromat. He was wearing a distinctively colored sweater similar to the one he was wearing when he was seen talking to the victim. While at the laundromat Redford threatened this other woman with a knife, ordered her to leave the laundromat quietly with him and get into his automobile.

Following the discovery of the victim's body, the police obtained a warrant to search Redford's automobile but did not use the warrant because Redford willingly sold the car through the agency of his mother to a man who was a part time deputy sheriff. Redford did not know when the sale was made that the purchaser was a part time deputy sheriff.

A search of the automobile revealed strands of hair that were microscopically identical in all characteristics to hairs from the head of the victim. These hairs were found on the plastic and cloth seat covers and floor mats of the automobile.

Redford admits here "that the Utah Supreme Court adequately stated the facts upon which petitioner relies" and that "the facts are . . . accepted" although the conclusions drawn from those facts are not. Memorandum in Opposition to Summary Affirmance of District Court Order, Case No. 75–1305.

Redford's four claims before the district court were:

1. That his constitutional rights were violated when the state trial court admitted into evidence objects seized from the petitioner's automobile during a warrantless search;

2. That his constitutional rights were violated when the trial court permitted the

[*] Of the United States District Court for the Eastern District of Oklahoma, sitting by designation.

prosecuting attorney over his objection to cross-examine him concerning facts not present in the record;

3. That his constitutional rights were violated when the trial court permitted the prosecuting attorney over his objection to engage in cross-examination that constituted a statement of the prosecuting attorney's belief in his guilt; and

4. That his constitutional rights were violated by the state trial court's improper dismissal of a juror.

The district court examined each claim, wrote an opinion setting forth its reasons in dealing with each claim, and concluded that Redford's motion for leave to proceed in forma pauperis "is frivolous within the meaning of 28 U.S.C. § 1915(d)" and denied him leave to proceed in that fashion. 28 U.S.C. § 1915(d) provides as follows:

"The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

On appeal Redford argues that the district court committed error in failing to follow the procedure laid down by this court in *Ragan v. Cox*, 305 F.2d 58 (10th Cir.1962). In *Ragan* the district court, without stating any reasons whatsoever, denied the petitioner leave to file in forma pauperis two petitions for habeas corpus. Thereafter, the district court, without stating any reasons and without any certificate that the appeal was not taken in good faith, denied petitioner leave to appeal in forma pauperis. In setting forth the procedure to be followed, we stated:

"When a district court receives an application for leave to proceed in *forma pauperis*, it should examine the papers and determine if the requirements of § 1915(a) are satisfied. If they are, leave should be granted. Thereafter, if the court finds that the allegations of poverty are untrue or that the action is frivolous or malicious, it may dismiss the case but in so doing it should clearly state the grounds for such action." 305 F.2d at 60.

In several subsequent cases we have held that if there has been substantial compliance with the procedure specified in *Ragan*, the procedure is adequate. Thus, in *Oughton v. United States*, 310 F.2d 803 (10th Cir.1962) we stated:

In this instance the file, which was scrutinized by the district court, has been preserved among the records of that court, and is available for our review. While the procedure outlined in *Ragan v. Cox*, supra, should be followed, the requirements set forth there were substantially complied with in this instance, and we have considered the matter as though the motion to proceed in forma pauperis had been granted and the case then dismissed because it was found to be frivolous. 310 F.2d at 804.

More recently, in *Harbolt v. Alldredge*, 464 F.2d 1243 (10th Cir. 1972) we reached the same conclusion. Here, as in *Harbolt* and *Oughton*, the district court preserved the petition as if it had been filed, examined it and entered an order detailing his reasons for finding the petition frivolous and denied leave to proceed in forma pauperis. Therefore, as in *Harbolt* and *Oughton*, we treat the petition as if it had been filed and subsequently dismissed as frivolous. The question on appeal then is whether the action was properly dismissed as frivolous.

Redford has asserted four claims for habeas relief. The first asserts that critical evidence introduced against him was obtained in violation of the fourth amendment. The second and third claims allege that Redford was denied a fair trial because of the manner and content of the prosecuting attorney's cross-examination of Redford. The fourth claim is that he was denied a fair trial and due process because the trial judge dismissed a juror on the ground that the juror could not return a verdict recommending the death penalty. These claims will be discussed separately.

## I. The First Claim.

In his first allegation, Redford contends that an automobile search which yielded

hairs from the head of the murder victim was unconstitutional. Specifically, Redford claims that a person representing himself as one Bart Holman approached Redford's mother with an offer to buy Redford's car to use as a parts source for a racing car; that Redford's mother did obtain his consent to the sale; that the person representing himself as Bart Holman was actually one Greg Newton and was a part time deputy sheriff. In his petition Redford asserts that Newton's discussion about purchasing the car was "merely a subterfuge for a warrantless search and seizure undertaken by Police Officers investigating the crime of which Redford was ultimately convicted." On appeal from his conviction, Redford argued that this search was improper because it was accomplished by consent which was obtained through deceit, relying on *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), and *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966).

In determining this claim to be frivolous, the district court invoked that portion of 28 U.S.C. § 2254(d) which provides:

"In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—[there follow eight specific exceptions, none of which are alleged or admitted here.]"

The district court examined the published opinion of the Utah Supreme Court affirming Redford's conviction, *State v. Redford,* 27 Utah 2d 379, 496 P.2d 884 (1972), noted that the Supreme Court had held that the sale of Redford's car "was voluntarily made, and once a sale is consummated, the seller cannot complain about any search which may be made thereafter" and held that the determination by the Supreme Court of Utah "shall be presumed to be correct unless the applicant shall establish" one of the eight circumstances delineated in the statute. The district court also held, in effect, that Redford's fourth amendment claim was groundless, citing Mr. Justice Powell's concurring opinion in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Redford challenges this ruling and argues that it was improper for the district court to presume the correctness of the determination by the Utah Supreme Court.

The same question was raised in *Crow v. Eyeman,* 459 F.2d 24 (9th Cir.1972). There Crow was convicted by an Arizona jury on two counts of murder in the first degree and on another count of assault with intent to commit murder. He appealed to the State Supreme Court, which affirmed his convictions. He then filed a petition for writ of habeas corpus in the federal district court under 28 U.S.C. § 2254. The district judge denied the petition and the Court of Appeals affirmed, saying:

Crow challenges his conviction on four separate grounds, all of which were raised before the Arizona Supreme Court. He first alleges that the evidence at his trial was insufficient to support a conviction for first degree murder. The state supreme court's determination that the evidence was sufficient is presumed to be correct unless the appellant establishes that the state fact-finding process was deficient in one of the ways specified by 28 U.S.C. § 2254(d). Crow has made no such showing. 459 F.2d at 25.

In this case there can be no deficiency about the fact-finding process inasmuch as Redford admits the Supreme Court of Utah "adequately stated the facts" and those "facts are . . . accepted."

In *Mobley ex rel. Ross v. Meek,* 394 F.Supp. 1219 (W.D.Ark.1975) the court applied the same principle with respect to a determination by the Arkansas Supreme

Court, saying that since "there is a written opinion of the Arkansas Supreme Court, under 28 U.S.C. § 2254(d), each finding is presumed to be correct unless the applicant shall establish or it shall otherwise appear" that one of the eight circumstances enumerated in the statute appear. 394 F.Supp. at 1220. Thus as to this point we too conclude that the district court was not in error.

Redford also claims that the search of his car under the circumstances outlined above was in violation of his fourth amendment rights. In particular he urges *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921). *Gouled* is not in point. It involved the search and seizure of the defendant's private papers taken from his office without a search warrant after entry was gained by stealth. The papers taken were the private papers of the defendant and the office searched was the private office of the defendant, and the court understandingly held that the "security and the privacy of the home or office and of the papers of the owner would be as much invaded and the search and seizure would be as much against his will" as if the search and seizure had been obtained by coercion. 255 U.S. at 305–306, 41 S.Ct. at 263.

■ In this case the automobile which Redford had formerly owned and which was searched and in which the hairs were found was voluntarily sold by Redford prior to the search. When the search was conducted he had willingly and voluntarily parted with ownership of the automobile. He had no standing to complain of the search. In *Wilson v. United States,* 218 F.2d 754 (10th Cir.1955) we said:

> "The law is well settled that the protection of the Fourth Amendment to the Constitution against unreasonable search and seizure is personal to the one asserting it, and one who claims no proprietary or possessory interest in that which has been seized as a result of a search may not object to its introduction in evidence." 218 F.2d at 756.

*In accord, see United States v. Mendoz,* 473 F.2d 692 (5th Cir.1973); *United States v. Hunt,* 505 F.2d 931 (5th Cir.1974), *cert. den.*

421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975).

*Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966) also urged by Redford is totally wide of the mark, for it involves a case in which it was held that an undercover federal narcotics agent who entered the defendant's home after having been invited there to purchase narcotics did not violate defendant's fourth amendment rights when he entered for the purpose of executing a felonious sale of narcotics. Indeed the defendant in that case also urged *Gouled.* In distinguishing *Gouled* the court noted that "a short statement of that case will demonstrate how misplaced his reliance is." 385 U.S. at 209, 87 S.Ct. at 426.

It is thus apparent that Redford's fourth amendment claims are totally insubstantial and devoid of merit. In such a circumstance we held in *Harbolt* that petitioner's claim was properly dismissed by the district court as frivolous, saying:

> In view of these circumstances and the clear provisions of the statute and the regulations on the confidentiality of the documents we are satisfied that Harbolt's allegations are insubstantial.

· · · ·

As stated above, the *Ragan* case does prescribe a different procedure than was here followed. However, the order entered by the District Court shows that the court examined the complaint, which was preserved with the order, and concluded that it was "clearly without merit," holding that the defendants were immune from damages under the allegations made. We conclude that this is the result which in any event was dictated by the statute, the regulations and the averments made. As we determined in a similar situation in *Oughton v. United States,* 310 F.2d 803 (10th Cir.), cert. denied, 373 U.S. 937, 83 S.Ct. 1542, 10 L.Ed.2d 693, there was substantial compliance with the required procedure and we will not disturb the order entered. Appellant's claim has been measured by the substance of his complaint as if filed

and then dismissed as frivolous. 464 F.2d at 1244–45.

Here, as in *Harbolt,* "we are satisfied that no rational argument on the law or the facts could be made" in support of Redford's claim.

■ Moreover, in light of the recent decision of the Supreme Court in *Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) and our opinion in *Chavez v. Rodriguez,* 540 F.2d 500 (10th Cir. 1976) this claim is not cognizable in a federal habeas corpus proceeding. In *Stone,* the Court held that

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. *Id.* —— U.S. at ——, 96 S.Ct. at 3052.

The Court further explained that

> "[A] federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." *Id.* —— U.S. at —— n. 37, 96 S.Ct. at 3052.

Redford has made no such allegation or showing. On the contrary, the record shows that the trial court considered this matter on Redford's motion to suppress (noted in Redford's brief to the Supreme Court of Utah, which brief is included in the appendix to appellee's brief here) and the Supreme Court of Utah again considered the claim on direct review. Redford's claim based on the introduction of evidence seized in an unconstitutional search and seizure is not cognizable in this habeas review.

## II. *The Second and Third Claims.*

In his second and third claims, Redford contends that his rights to a fair trial and to due process guaranteed by the fifth, sixth, and fourteenth amendments were violated because the trial court permitted the prosecuting attorney to cross-examine Redford concerning facts not present in the record (Redford's second allegation of error) and to cross-examine in a way that constituted "a statement of the prosecuting attorney's belief in [Redford's] guilt" (the third allegation of error). In his petition Redford sets forth the particular interrogation of which he complains. In dismissing these claims the district court relied upon the determination by the Utah Supreme Court that neither the questions nor the manner in which they were asked were improper; upon the rule that trial errors are not generally reviewable by a federal court on a habeas petition; and upon the principle that Redford had failed to bear his burden of proof or to show a federal constitutional violation.

■ There is no constitutional provision mandating or prohibiting any particular form of cross-examination. Redford cannot argue that the questions were in themselves unconstitutional. Nor can Redford make a rational argument that this cross-examination violated his right to a fair trial. "The Fourteenth Amendment is a protection against criminal trials in state courts conducted in such a manner as amounts to a disregard of 'that fundamental fairness essential to the very concept of justice,' and in a way that 'necessarily prevent[s] a fair trial.'" *Lyons v. Oklahoma,* 322 U.S. 596, 605, 64 S.Ct. 1208, 1213, 88 L.Ed. 1481 (1943), citing *Lisemba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941). No such conduct occurred here. Accordingly, the district court's dismissal of Redford's second and third claims was proper because these claims are frivolous.

## III. *The Fourth Claim.*

Redford's fourth claim is based upon his allegation that the state trial court, on its own motion, discharged a prospective juror, who on voir dire stated that he would not under any circumstances return a verdict recommending the death penalty. Redford argues that the reasons given by the state trial judge for discharging this juror are

not among the reasons sanctioned by Utah statute. The district court dismissed this fourth claim holding that because Redford had not in fact received a sentence of death he had failed to state a claim upon which federal habeas corpus relief could be granted. The district court also relied on the fact that the Supreme Court of Utah had held, in its published opinion denying Redford's appeal from his conviction, that the trial court's action was in accordance with Utah statutes and on the fact that Redford does not allege in his petition that such statutory construction by the Utah court is contrary to the United States Constitution.

■ Redford's petition shows on its face (page 3) that Redford did not receive the death sentence but was instead "Re-sentenced to life imprisonment." Such a petitioner is not entitled to federal habeas corpus relief on the ground that jurors unwilling to impose the death penalty were excluded from the jury. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Sinclair v. Turner*, 447 F.2d 1158 (10th Cir.1971); *Simpson v. Wainwright*, 488 F.2d 494 (5th Cir.1973).

■ It should also be noted that Redford's petition alleges only that the jury selection procedure, with respect to the excluded juror, was not in accordance with state statute. The Utah Supreme Court has ruled against Redford on this precise point, finding that the exclusion of this juror was accomplished in accordance with state law. The federal courts are bound by a state's interpretation of its own statutes. *Salazar v. Rodriguez*, 371 F.2d 726 (10th Cir.1967). Redford has not claimed that the statute, as interpreted by the Supreme Court of Utah, is unconstitutional, and so has failed to allege any constitutional question with respect to his fourth claim.

Accordingly, the fourth claim was properly dismissed as frivolous.

Affirmed.