**Kenneth Alvis PIERCE,**
**#81291, Petitioner,**

v.

**STATE OF OKLAHOMA et al.,**
**Respondents.**

**No. CIV–76–0953–D.**

United States District Court,
W. D. Oklahoma.

April 20, 1977.

Kenneth Alvis Pierce pro se.

Larry Derryberry, Atty. Gen., by John F. Fischer, II, Asst. Atty. Gen., Oklahoma City, Okl., for respondents.

## ORDER

DAUGHERTY, Chief Judge.

In this habeas proceeding the above-named petitioner challenges the constitutional validity of his conviction in case No. CRF–70–688, District Court of Oklahoma County, Oklahoma. At the threshold the respondents assert that the Petition should be dismissed for lack of jurisdiction because the petitioner completed the service of sentence in said case and was discharged from custody on November 22, 1976. The petitioner admits that he has completed the service of his sentence but points to possible future use of conviction to enhance punishment on any subsequent conviction.

From the court's examination of the files it appears that the Petition was verified on November 18, 1976, and mailed November 19th. It was received by the clerk of this court on November 22, 1976 and filed on November 23, 1976. In *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the Supreme Court recognized there are collateral disabilities of an ex-convict which survive the satisfaction of the sentence imposed on him and ruled that when federal habeas corpus jurisdiction has attached in the district court it is not defeated by the release of the petitioner prior to completion of proceedings on such application.

Although jurisdiction perhaps did not technically attach in this case until the filing of the Petition one day after petitioner's release the court believes that it is consistent with the principles of *Carafas* to find that jurisdiction does exist under the circumstances here presented and the case is not moot.

Turning to petitioner's claims in this case, he alleges:

"1. That evidence obtained thru a constitutionally illegal search was used against him;

2. That he was not competent to aid and assist counsel at his trial and was tried without the benefit of a hearing and/or examination on the matter;

3. That the temporary commitment and/or procedure used by the State of Oklahoma for determining mental competency is unconstitutionally vague, overbroad and violative of due process of law;

4. That the State of Oklahoma improperly used a non-related prior conviction to enhance punishment in his case;

5. That he has been denied his constitutional right to a speedy hearing within the concepts of due process and a just remedy for his grievances."

■ The search issues have been treated in the state courts at trial, on direct appeal and in proceedings under the Oklahoma Post Conviction Procedure Act. Under these circumstances this court need not further consider his allegations. In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) the Supreme Court held that:

". . . Where the state has provided an opportunity for full and fair litigation of a fourth amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial."

(id., 96 S.Ct. at 3052.)

The Court further commented that:

". . . A federal court need not apply the exclusionary rule on habeas review of a fourth amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review."

(id., 96 S.Ct. at 3052 n. 37.)

The petitioner's second proposition concerning his incompetency at the time of trial raises a federal constitutional question. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The issue was first raised on the day set for trial October 5, 1970. The petitioner's privately retained attorney filed a written "Motion to Require Medical Examination" in which the court was requested to commit the petitioner pursuant to 22 O.S.A. §§ 1171–1174 for observation and examination for a period up to 60 days to determine if the petitioner was competent to stand trial and to suspend the criminal proceedings pending said examination. The attorney averred that the Motion was in good faith and attached in support of the Motion were court records showing commitments of the petitioner to state hospitals as a mental patient on May 11, 1959 and May 22, 1961 together with an affidavit by petitioner's mother that she had observed her son to be irrational in conversation and conduct and unable to intelligently discuss his defense with her. The petitioner had been arrested on March 13, 1970 and released on bond. There had been two preliminary hearings. The case had once been set for trial on June 10, 1970 and then continued. On June 24, 1970 it had been reset for trial for October 5th. On September 30th the defense counsel had filed a Demurrer, a Motion to Strike, a Motion to Suppress, and a Motion to Quash Second Amended Information and to Dismiss. One of the grounds urged in the latter Motion was that the defendant had been deprived of a speedy trial. Defense counsel presented no argument or other evidence in support of the Motion for Examination and the court denied it. Before proceeding to trial the defense counsel orally moved for continuance on the ground that witnesses essential to the defense were absent. This Motion also was overruled. Defense counsel did not move, either orally or in writing, for a jury trial on the issue of present insanity either when the case was called for trial or after conviction when the defendant was brought up for judgment, as he could have done under the Oklahoma Statutes, 22 O.S.A. §§ 1161–1167. Error in overruling the Motion for Examination was assigned in the Motion for a New Trial but was not treated on direct appeal. *Pierce v. State*, Okl.Cr., 491 P.2d 335. In his first applica-

tion for post conviction relief in the state sentencing court the petitioner alleged only that the affidavit for the search warrant was insufficient. It was denied without a hearing on July 18, 1972 and affirmed by the Court of Criminal Appeals on August 23, 1972. It was not until the petitioner filed a second application for post conviction relief in the District Court of Oklahoma County that the petitioner fairly presented the competency issue as well as again reasserting his contention concerning the search. The sentencing court on June 22, 1973 declined to hear this application and dismissed the case. Subsequently on March 4, 1974 the Court of Criminal Appeals directed the District Court of Oklahoma County to conduct an evidentiary hearing on the issue of petitioner's competency to stand trial. On April 4, 1974 the District Court of Oklahoma County conducted such a hearing with the petitioner present in person and with the Public Defender of Oklahoma County as his attorney. The petitioner took the stand and related the history of his commitments in 1959 and 1961. He testified that he was unable to communicate with his lawyer and that if he had been competent he could have conveyed to his attorney the names of witnesses who could have established his innocence. When asked by the State's attorney if he was under the influence of narcotics at the time of trial the witness objected to answering the question and the court sustained his objection. The State also introduced during petitioner's testimony the defense subpoenas showing the defense had subpoenaed seven witnesses for trial. The petitioner's mother also testified. She related to the court that she had been responsible for petitioner's commitment in 1959 and 1961 and that his behavior in October of 1970 was similar to what it was at the time of his prior commitments. The petitioner's ex-wife testified that she had observed the petitioner in October 1970 "talking to himself or the four walls because there wouldn't be anyone there you could see that he would be carrying on a conversation with." (Tr. 4-4-74, p. 36.)

The State called to the stand defendant's trial attorney who testified that he had presented to the court no testimony in support of his motion in addition to the affidavit which had been attached. In response to a question whether he had ever presented anything during the course of the trial either to the court or to the jury relating to the mental condition of the defendant he responded:

"No; I stood on my motion and application to commit him for psychiatric examination, which I was denied in court, and I thought it was a good motion and just stood on it."

(Tr. 4-4-74, p. 45.)

On cross-examination he testified that the petitioner was in no condition to be called as a witness at trial and that he did not call him as a witness in his own behalf.

On redirect the witness also told the court that the petitioner was heavily addicted to narcotics. He said that he had represented him in two prior trials that year but that the petitioner's condition had gotten worse. He advised that in his opinion the petitioner was not in any condition to go to trial because he had a mental problem compounded by using narcotics.

The Assistant District Attorney of Oklahoma County who prosecuted the petitioner at his trial in October 1970 testified that he observed the demeanor and actions of the defendant during the trial. He said that he saw the defendant talk to his lawyer on numerous occasions during the trial. He also said there was nothing unusual about the petitioner's actions during the trial and that he caused no commotion of any kind in the courtroom. He further testified to the circumstances surrounding the overruling of defense counsel's motion for examination. It was heard in chambers by the trial judge and, according to the witness, defense counsel stated to the court that he didn't desire to put on any evidence and he would just rest on his motion. No statement was made by the defense attorney to the court that he was not able to confer with his client and he did not ask the court to be allowed to present any evidence in support of the motion. He concluded:

"It was more or less at Mr. Black's request that the court went ahead and overruled the motion."

(Tr. 4–4–74, p. 52.)

The witness also testified that he had occasion to talk to the defendant during the course of the trial on matters other than the charge itself as they had become acquainted with each other during a prior trial. During the course of these conversations petitioner never gave any indication of there being anything mentally wrong with him. At the conclusion of this testimony the court recessed the hearing until April 9th at the request of the petitioner in order to enable him to present additional testimony. On April 9th there were introduced in evidence stipulations prepared by the petitioner personally as to the testimony of three witnesses. It was stipulated that if Dr. Virgil Jobe was present in person he would testify that:

"A person afflicted with certain mental disorders such a (sic) 'schizophrenia and paranoia' while under the affects of said disorders his demeanor would be very simular (sic) to the demeanor of a person under the influence of certain narcotic drugs." ·

(Def. Exh. 1)

It was also stipulated that if Mike Swanson were present in court he would testify that he was in the Oklahoma County Jail on October 5th, 1970, when the petitioner was placed in the same tank cell with him and that he observed the petitioner at that time "to be very irrational in both actions and conversation". (Def. Exh. 2.) Mickey Allen Owens a nephew of the petitioner testified at petitioner's trial and it was stipulated that if he were present at the evidentiary hearing he would testify that he was with the petitioner on the night he was arrested and saw him several times thereafter and immediately prior to the trial. On the day before the trial when he visited his uncle he observed him to be in great pain and his conversation was irrational. The stipulation further recited:

"On the morning of the trial he observed that his uncle no longer acted nor talked like the same person. In his opinion his uncle did not know or understand the nature of the proceedings against him."

(Def. Exh. 3.)

The district judge in a memorandum transmitted to the Court of Criminal Appeals stated:

"The court is convinced from his appearance and the evidence that the defendant is now, and at all times in the past has been competent, exceptionally so. He is well-versed in the law, exceptionally so, and the contention now made that he was and is incompetent is without foundation. He did not see fit to have his attorney present this properly to the trial judge and did not raise the question on appeal. It was apparently filed in anticipation of conviction and for future presentation as now being considered."

After reviewing the transcript of proceedings of April 4th and 9th the Court of Criminal Appeals remanded the matter back to the District Court with the directions that the petitioner should be committed to the State Mental Hospital for observation and a subsequent hearing be held to receive the testimony of the examining psychiatrist. The petitioner was admitted to Central State Hospital on May 10, 1974 and remained there until May 23, 1974. On May 22nd Loraine Schmidt, M.D., Chief Department of Forensic Psychiatry wrote to the district judge advising him:

"Although Mr. Pierce displays no symptoms of mental illness at this time, it is impossible to complete our psychiatric evaluation of him as he refuses to discuss any information concerning his charges which led to his conviction or any information concerning his past life, as he does not want 'to incriminate' himself. We are also unable to complete the laboratory evaluation as he gives litiginous reasons for not submitting to the routine chest and skull x-rays which we consider part of the evaluation.

Since a further period of observation would be useless, it is recommended that he be returned to your custody for your disposition at your earliest convenience."

At the subsequent hearing on June 20, 1974, the petitioner was again present in person and with the Public Defender of Oklahoma County. The two psychiatrists who had examined the petitioner at the hospital testified. The first, Dr. William L. Baker, testified that the defendant refused to cooperate in his examination and that he was unable to determine what his mental condition was in October 1970. Dr. Schmidt also related she was unable to make any evaluation as to the petitioner's capacity to appreciate his legal position and confer with his lawyer in defense of criminal charges on October 5, 1970. She explained how the petitioner had been unwilling to give the psychiatrists any information and stated that if she had obtained the requested information that it might have been possible to form an opinion as to his competency on October 5, 1970. Following this hearing the district judge made written "Findings" in which he concluded:

> "It is the judgment of this court from all the evidence and matters before the Court, that this defendant was competent at his trial and is now competent, and that he has not been denied any constitutional or statutory right."

On March 17, 1975, the Court of Criminal Appeals affirmed the district court's denial of post conviction relief commenting:

> "The issue of primary concern with this Court is whether or not the evidence adduced at the hearing is sufficient to establish that the accused in the instant case was able to aid his lawyer in his defense. At the hearing conducted on April 4, 1974, the defense produced evidence that he was unable to aid his counsel in his defense. The evidence revealed that defendant was addicted to narcotics at the time of the trial and his physical condition because of this addiction resulted in his inability to aid his counsel. The State produced evidence which established that at the time of the trial defendant appeared to be able to aid his defense lawyer. Following said hearing, this Court as above mentioned remanded the cause for additional hearing for the purpose of requiring additional expert testimony from a psychiatrist. We note the record at the subsequent hearing indicates defendant refused to cooperate with the doctors and refused to submit to certain diagnostic tests. The testimony of the doctors revealed that without these test results and responses solicited from interviews with the defendant they could not form an opinion regarding his ability to aid counsel in his defense at the time of trial.

> We have studied this record and this Court has gone to great lengths in an effort to determine whether defendant was able to aid his counsel in his defense. The issue before this Court on review, in this Court's judgment, appears to be a factual determination. The evidence adduced at the hearing is controverted. There is evidence in the record which establishes that defendant was able to aid in his defense. The trial court, upon reviewing the evidence in determining this factual issue, resolved the question adversely to defendant. Subsequently, defendant was offered an opportunity to strengthen his case by submitting to the diagnostic tests of a psychiatrist. He refused. In light of all the circumstances considered and the evidence adduced at both hearings, we find the trial court's factual determination that defendant was able to aid in his defense was not clearly erroneous and clearly against the weight of the evidence and for this reason we will not disturb the trial court's finding on appeal."

■ The Motion for Mental Examination by defense counsel appears to have been a last minute effort to delay petitioner's trial. Defense counsel had represented him in this case for nearly eight months. He had represented him successfully in two prior trials that year. He had obviously conferred with the petitioner many times concerning the details of his arrest and any possible defense available to him. He was undoubtedly completely familiar with the State's case because of the two previous preliminary hearings. The key to a successful defense was the constitutionality of the

search which was vigorously contested. The trial judge had on the one hand been presented the claim that the petitioner had been deprived of a speedy trial and on the other an attempt at further delay. Defense counsel offered no argument or additional evidence on the Motion. Under Oklahoma law the Motion which he presented should have been made prior to the calling of the Information for trial. 22 O.S.A. § 1171. If he were serious in his doubts about the petitioner's competency when the case was called for trial the appropriate procedure was to call for a jury trial as to the defendant's insanity. 22 O.S.A. § 1162. It appears that defense counsel was more interested in making a record than in assisting the court in protecting the defendant's rights. Evidently the trial judge, and quite clearly the post conviction judge, believed that the Motion was not made in good faith. A continuance is a matter of discretion and a frivolous or bad faith motion to determine mental competency to stand trial for the purpose of delay may be properly denied. *United States v. Hill*, 526 F.2d 1019 (CA10 1975), cert. denied, 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182.

■ The Oklahoma courts commendably afforded the petitioner the opportunity in three hearings to develop all facts necessary to a judicial determination of his mental competency at the time of trial. The petitioner arbitrarily decided that he really didn't want that essential determination made and refused to provide the information which might have made it possible for mental experts to know whether or not in fact he was a fraud or truthfully a mentally disabled person. After these full and fair hearings which the petitioner does not challenge on any of the grounds set forth in 28 U.S.C. § 2254(d) and (e) the factual determination that petitioner was not mentally incompetent at the time of the trial was made. This court was provided the transcripts of all of these hearings and under the circumstances is not required to hold a further evidentiary hearing. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Price v. Turner*, 421 F.2d 191 (CA10 1970); *Day v. Page*, 411 F.2d 810

(CA10 1968). The hearings conducted in the Oklahoma courts meet fully the requirements of 28 U.S.C. § 2254 and are presumed to be correct. *Sandoval v. Rodriguez*, 461 F.2d 1097 (CA10 1972). This court has examined the complete record in petitioner's case including his trial transcript as well as the record in the post conviction proceedings to make an independent determination of whether there is factual and legal support for the state court adjudication. See *Maxwell v. Turner*, 411 F.2d 805 (CA10 1969). It certainly cannot be said that there is no such factual and legal support. Petitioner's lament that he was unable to communicate the name of witnesses to his attorney is belied by the fact that two witnesses did testify in his behalf and others were subpoenaed. The observations and opinion of the prosecutor were certainly entitled to as much weight as the observations and opinion of the defense counsel. In short, we believe the law was properly applied and agree with the analysis and comments of the Court of Criminal Appeals quoted above.

■ The third contention of the petitioner that Oklahoma's procedure for determination of mental competency is without merit. He cites no cases in support of such a bald conclusion. As was true of Illinois in *Pate v. Robinson, supra,* and Missouri in *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the Oklahoma procedures are on their face constitutionally adequate to protect the right of an accused not to be tried while legally incompetent.

■ The petitioner's contention that it was improper to use non-drug former convictions to enhance punishment raises only a question of Oklahoma law. The former convictions used to enhance punishment in petitioner's case were robbery by force and fear and burglary second degree after former conviction of a felony. This was proper under the provisions of 21 O.S. 1971 § 51. *Loane v. State*, 504 P.2d 1243 (Okl.Cr.1972). A federal court must accept the interpretation of state law by the state court unless it is inconsistent with the fun-

damental principles of liberty and justice. *Goldsmith v. Cheney*, 447 F.2d 624 (CA10 1971); *Francia v. Rodriguez*, 371 F.2d 827 (CA10 1961); *Ratley v. Crouse*, 365 F.2d 320 (CA10 1966) and *Mesmer v. Raines*, 298 F.2d 718 (CA10 1961). No such showing is made here. Since this court is bound by the state's interpretation of its own statutes and there is no allegation that the statute as interpreted by the state court is unconstitutional the petitioner has failed to allege any constitutional question with respect to this claim. *Redford v. Smith*, 543 F.2d 726 (CA10 1976).

 The petitioner's final claim that his detention was rendered unlawful by delay in the final determination by the state courts of his post conviction application also fails to state a claim for which federal habeas relief may be granted. A state prisoner's detention is not rendered unlawful merely because there may have been errors or defects in a state post conviction proceeding. *Noble v. Sigler*, 351 F.2d 673 (CA8 1965). In *Stokley v. State of Maryland*, 301 F.Supp. 653, 657 (D.Md.1969) the court pointed out:

> "Even assuming that, as claimed by petitioner, there was some infirmity in his post conviction proceedings, petitioner would not be entitled to federal habeas corpus relief on this ground inasmuch as such a claim represents an attack on a proceeding collateral to the detention of petitioner and not on the detention itself."

See also *Welborn v. Cox*, 337 F.Supp. 16 (W.D.Va.1971).

Accordingly as evidenced by the foregoing analysis there are no material issues of fact which require an evidentiary hearing in this court and the Petition for Writ of Habeas Corpus will be denied.

IT IS SO ORDERED.