496 P.2d 884

The STATE of Utah, Plaintiff and Respondent,

v.

Clark James REDFORD, Defendant and Appellant.

No. 12480.

Supreme Court of Utah.

May 3, 1972.

Robert Van Sciver, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., David S. Young, Chief Asst. Atty. Gen., Salt Lake City, for respondent.

ELLETT, Justice:

The defendant was convicted by a jury of the crime of murder in the first degree without any recommendation of leniency and was sentenced to death. He appeals, claiming the trial court committed reversible error in four particulars, to wit:

I. By admitting evidence of a prior assault by appellant upon a person other than the victim herein.

II. In permitting the district attorney to exceed the bounds of permissible cross-examination.

III. In admitting into evidence items seized from appellant's automobile.

IV. In dismissing a juror upon the court's own motion for a cause not found in the Utah statutes and thus wrongfully excluding a juror from the panel.

The evidence presented to the jury would warrant a finding of the following facts:

The victim's automobile was stalled upon a freeway. The defendant was seen talking to her while his own automobile was parked immediately behind her car. Soon thereafter the victim's car was empty, and 16 days later her body was found near the only standing house in an old aban-

doned mining town about 40 or 50 miles away. Her shoes were found in another area nearby, and other personal items were found in still another area nearby. This house had belonged to the defendant's grandmother, and defendant was acquainted with it. Entrance to the house had to be made through a window, and fibers from defendant's sweater were found on the windowsill. The victim had been raped and apparently choked to death by means of a tourniquet made from a part of a pair of pantyhose and a sleeve of her sweater with a stick inserted therein. Strands of hair microscopically identical in all characteristics to hairs from the head of the victim were found on the plastic and cloth seat covers and floor mats of defendant's car.

The defendant and another man had planned to go to Ely, Nevada that day to marry two girls, but the defendant did not show up to get his bride-to-be until about 9:45 p.m., and when he arrived, he had mud on his shoes and a bruise under one of his eyes.

While in Ely the defendant bought a new pair of shoes and shortly after leaving Ely on the return trip to Utah threw the muddy shoes away.

The defendant's mother, as his agent, agreed to sell his car to a service station operator, not knowing the buyer was a part-time deputy sheriff. After the car and title to it were transferred to the buyer, a search was made which revealed the incriminating evidence against the defendant.

With this background in mind, we will now examine the assignments of error.

## I.

■ Several witnesses testified that they drove past the stalled car with a young woman in it and saw a man whom they believed to be the defendant standing beside it.

A passing motorist driving on a freeway does not have much opportunity to examine carefully the identifying features of a person standing beside a stalled car. Therefore, the testimony of these witnesses regarding the identification of the defendant might not convince the jury beyond a reasonable doubt that it was he who stood beside the victim's car. However, the automobile parked behind the stalled car was of such a vintage and color that one could hardly fail to identify it whatever the speed of the witness in passing it might be. The man beside the car wore a distinctively-colored sweater which each witness noticed.

In order to demonstrate that the defendant was the one beside the victim's car, the district attorney offered evidence which would justify a finding that the defendant was the man beside the stalled car.

A witness was called to the stand who testified that she was in a laundromat the night before the victim disappeared and that she was confronted by the defendant in this case, who was wearing a sweater as described by those witnesses who saw him talking to the victim. The witness further testified that the defendant placed an open knife against her person and ordered her to leave the laundromat quietly with him and to get into his automobile, which was like the one seen by the other witnesses behind the stalled car. This witness had an excellent opportunity to identify the defendant and just cause to remember him. Therefore, her testimony was extremely valuable in enabling the jury to determine that it was the defendant, or one wearing his sweater and using his automobile who was last seen with the victim.

The court properly told the jury that the evidence could only be considered by them in connection with identification of the defendant and with his method of operation.

We find no error in the admission of this evidence for consideration by the jury.

## II.

■ The defendant testified in his own defense and thereby made himself subject to cross-examination the same as any other witness. He objects because the prosecuting attorney asked questions which tended to emphasize the theory of the State's case. One would hardly expect a prosecutor to emphasize the theory which had been the basis for defendant's direct examination. We see no error in asking a witness on cross-examination if certain matters were not true when they relate to factual matters which might be true, and especially is this so when the witness is the only one who knows what the truth is and had testified to facts which were favorable to himself.

## III.

■ We cannot agree with the claim of appellant that the evidence found in the car should have been suppressed. The State had a search warrant for the car but did not use it because the appellant willingly sold his car through the agency of his mother. The fact that neither appellant nor his mother knew that the purchaser was a part-time deputy sheriff is of no concern. The sale was voluntarily made, and once a sale is consummated, the seller cannot complain about any search which may be made thereafter.

## IV.

■ The appellant relies on the case of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), to show that error was committed by the trial judge

when he excused a juror who testified on voir dire examination as follows:

Q Mr. Knotts, you have indicated that you have some question or reservation as to the death penalty. Would your feelings in the matter prevent you from bringing in a verdict imposing the death penalty in any event in any case without regard to the evidence and the facts?

A I'd say yes, because I wouldn't want that on my conscience to sentence somebody to a death penalty that you're not sure of, regardless.

\* \* \* \* \* \*

Q Well, the Court will ask you this, Mr. Knotts, and if you don't understand it be sure to bring it to the Court's attention, is it your frame of mind at this time, then, that you could not and that you would not under any circumstances regardless of what the evidence might be, return a verdict recommending the death penalty?

A No, I couldn't do it.

Q That is your frame of mind, then—

A That's right.

Now, the Witherspoon case was not concerned with a juror like Mr. Knotts. There are three classes of jurors who may be called to sit on a murder case, to wit, those who have no scruples about the imposing of the death penalty; those who have scruples against it but who could consider it if the evidence of guilt was strong; and those who under no circumstances would impose the death penalty.

Witherspoon dealt with those jurors who had conscientious scruples against the death penalty but who could nevertheless impose it in a proper case. The statute involved in the Witherspoon case as set out in 391 U.S. 512, 88 S.Ct. 1772 provided:

In trials for murder it shall be a cause for challenge of any juror who shall, on being examined, state that he has conscientious scruples against capital punishment, or that he is opposed to the same.

Challenges were exercised under the Illinois statute to all who had scruples against the death penalty—regardless of whether or not they could impose it. This is what the Witherspoon case condemned.

The instant matter involved a juror who said he would not under any condition impose the penalty as provided by law for murder in the first degree. A footnote in the Witherspoon case specifically shows that it is not meant to require a juror in Mr. Knott's frame of mind to sit on a capital case. It states:

We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably

clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt. . . .*

The appellant further claims that the court erred in excluding the juror when no challenge had been made by either counsel. Section 77–30–19, U.C.A.1953, provides 12 grounds for challenge of a juror for implied bias. Eleven of those grounds would seem to require a challenge on the part of a party. However, the ground involved in the matter here complained of is worded differently. It reads:

(9) If the offense charged is punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty; *in which case he must neither be permitted nor compelled to serve as a juror.* [Emphasis added.]

It is the duty of the trial judge to see that the law is enforced; and since the juror with such conscientious scruples cannot be permitted to serve as a juror, there would arise a duty on the part of the court to excuse him, and there is no error if the order is made before a challenge is made. In fact, it would not be error on the part of the court to excuse such a juror even if both parties stipulated that he might serve.

The defendant had a fair trial, and the evidence supports the verdict. The judgment is, therefore, affirmed.

CALLISTER, C. J., and TUCKETT, HENRIOD and CROCKETT, JJ., concur.