STATE of Utah, Plaintiff and Appellee,

v.

Richard William BURGESS, Defendant and Appellant.

No. 930378–CA.

Court of Appeals of Utah.

Feb. 15, 1994.

Joel D. Berrett (argued), Roosevelt, for defendant and appellant.

Jan Graham, State Atty. Gen. and Kris C. Leonard, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS, DAVIS and GREENWOOD, JJ.

OPINION

BILLINGS, Presiding Judge:

Defendant Richard William Burgess appeals from an order determining that further review of his case should proceed under Utah Code Ann. § 77–16a–203 (Supp.1992). We affirm.

In 1983, defendant was involuntarily committed by court order to the Utah State Training School for an indeterminate period. In 1990, defendant pled guilty and mentally ill to three counts of sexual abuse of a child stemming from incidents that occurred while he was released from the Training School to visit his family. After a hearing on defendant's claim of mental illness, the court entered findings of fact and conclusions of law

indicating that defendant was mentally retarded and would pose an immediate physical danger to others if placed in a correctional or probational setting. Additionally, the court found that the Training School could provide him adequate treatment and care. The court sentenced defendant to the Training School for three consecutive terms of one to fifteen years and ordered the Training School to report to the court at twelve-month intervals.

In 1991 and 1992, the Training School reported defendant's disruptive behavior and lack of progress. Thereafter, in October 1992, the Training School submitted to the court a letter recommending that defendant be sent to the Utah State Prison. This recommendation was predicated on defendant's disruptive behavior, the risk he posed to other clients at the Training School, his negative prognosis for improvement, and his escape from the Training School one month earlier.

Based upon this recommendation, the State filed a motion requesting that defendant be returned to the Training School after his escape and evaluated pursuant to Utah Code Ann. § 77–16a–203 (Supp.1992).[1] The court granted the motion, ruling that "further review in this matter should proceed under ... Section 77–16a–203 Utah Code Annotated (1953) as amended." Furthermore, the court ordered defendant to be returned to the Training School to remain there "pending further proceedings consistent with the current statute." This appeal followed.

Defendant argues the trial court erroneously concluded that section 77–16a–203, rather than its predecessor,[2] governs review of his commitment and therefore improperly "amended" his sentence.[3] The State asserts that we should not consider the merits of defendant's claims because no final appealable order has been entered. Alterna-

---

1. Utah Code Ann. § 77–16a–203 (Supp.1992) sets forth a detailed process for reviewing mentally retarded offenders and determining whether they should remain at a treatment facility or be transferred to the Utah State Prison. Each mentally retarded defendant is evaluated at least once every six months by a review team, including a "designated mental retardation professional." *Id.* § 77–16a–203(1). That team reports to the executive director of the Department of Human Services, who notifies the Utah Department of Corrections if a transfer is recommended. *Id.* § 77–16a–203(2), (3). At that time, the Department of Corrections designates a transfer team to evaluate the review team's recommendation. *Id.* § 77–16a–204(1). The transfer team and medical administrator determine the appropriate facility for placement, *id.* § 77–16a–204(3); in the event that the Department of Human Services and the Department of Corrections do not agree on the transfer, the Board of Pardons is vested with the authority to decide the issue. *Id.* § 77–16a–204(4).

2. When Burgess was sentenced in August 1990, commitment of mentally retarded offenders was controlled by Utah Code Ann. §§ 77–16a–1 through –8 (Supp.1990). Effective July 1, 1992, these sections were repealed and replaced with §§ 77–16a–101 through –306 (Supp.1992). The 1990 version provided:

    When the facility to which a defendant has been committed under Section 77–16a–4 proposes to discharge the defendant prior to the expiration of his sentence, the facility shall transmit to the Board of Pardons a report on the condition of the defendant.... The Board of Pardons shall direct that the defendant serve

    any or all of the unexpired term of the sentence at the state prison, or place the defendant on parole.
    Utah Code Ann. § 77–16a–8(4) (Supp.1990).

3. Defendant argues for the first time in his reply brief that application of the 1992 amendments violates the ex post facto provision of article I, section 18 of the Utah Constitution. We find this argument without merit and thus treat it summarily. *State v. Carter*, 776 P.2d 886, 889 (Utah 1989) (noting court may decline to address meritless arguments).

    An ex post facto law is one that, inter alia, "makes more burdensome the punishment for a crime, after its commission." *State v. Norton*, 675 P.2d 577, 585 (Utah 1983), *overruled on other grounds by State v. Hansen*, 734 P.2d 421 (Utah 1986). The method of transfer does not increase defendant's punishment; as always, his sentence is three consecutive one-to-fifteen year terms. Furthermore, "[t]he ex post facto clause does not bar application of procedural changes to pending actions," *Norton*, 675 P.2d at 586, and his mere belief that the 1990 statute would govern the review process "does not prevent the State from depriving [him] of an expectation as to ... a procedure that has not yet accrued to his benefit." *Id.* Finally, defendant's argument rests on the faulty premise that under the 1990 statute, he would be released into society when the Training School recommended his discharge. However, as explained herein, his reading of the statute is incorrect. Consequently, we find no violation of the ex post facto provision of the Utah Constitution.

tively, the State claims that if we reach the merits, we should affirm the trial court's order because the 1992 statute controlled, and the challenged order did not improperly amend defendant's sentence.[4] Which statute should govern the review of defendant's placement is a question of law, which we review for correctness. *State v. Bagshaw*, 836 P.2d 1384, 1385 (Utah App.1992).

## FINALITY

■ As a threshold matter, the State asserts that the order from which defendant appeals is not a final order but rather "merely directs the parties to the law applicable to their dispute" and "has not disposed of the parties' dispute." As such, the State argues, this appeal is not properly before us because it fails to comply with Rules 3 and 4 of the Utah Rules of Appellate Procedure (requiring appeal from final orders of the court).

It is true that the order does not completely resolve the dispute between the parties and that the ultimate resolution may be the continuation of defendant's commitment at the Training School.[5] Nonetheless, the order adjudicates the only controversy the court has jurisdiction to decide: which statute governs the review process. As such it is the only order the court will enter. Whether defendant is transferred to prison will be decided by either the Board of Pardons, under the old statute, or the transfer review team, under the new statute. *See* Utah Code Ann. § 77–16a–8(4) (Supp.1990), § 77–16a–204(3) (Supp.1992).

Because the trial court has answered the only question before it and will not enter another order in this matter, we deem the order final for the purposes of appeal.

## RETROACTIVE APPLICATION

■ Defendant urges us to recognize his right to have his possible transfer to prison

governed by the law existing at the time he was sentenced, namely the 1990 version. He relies on the general principle that the law in force at the time of sentencing governs. *Belt v. Turner*, 25 Utah 2d 380, 381, 483 P.2d 425, 426 (1971). Defendant's argument ignores the well-settled principle that no person " 'has a vested right in any rule of law.' " *Berry ex rel. Berry v. Beech Aircraft*, 717 P.2d 670, 675 (Utah 1985) (quoting *Masich v. United States Smelting Co.*, 113 Utah 101, 124, 191 P.2d 612, 624, *appeal dismissed*, 335 U.S. 866, 69 S.Ct. 138, 93 L.Ed. 411 (1948)). "[A] right is not 'vested' unless it is something more than such a mere expectation as may be based upon an anticipated continuation of the present laws." *Silver King Coalition Mines Co. v. Industrial Comm'n*, 2 Utah 2d 1, 6, 268 P.2d 689, 692 (1954).

In 1990, defendant was sentenced according to the statutes applicable at that time, and he does not challenge the imposition of that sentence. He began serving his sentence in the Utah Training School immediately thereafter. The incidents leading to the instant proceeding arose in 1991 and 1992, when the Training School reported defendant's disruptive behavior and negative prognosis for improvement. Those incidents culminated in the October 1992 letter from the Training School recommending that defendant be transferred to prison. Meanwhile, the statute governing the transfer process was amended, effective July 1, 1992.

The placement decision was not ripe until the recommendation for transfer was submitted and resulted in a hearing in October 1992. That is, until the Training School recommended a change in defendant's placement, defendant had no more than a mere expectation that the 1990 statute would apply. Only at that time was the review process implicated, raising the question of which

4. We agree that the trial court did not improperly amend the sentence and accordingly do not treat this issue in any detail. The order appealed from did not change the sentence in any way; it merely determined which statutory procedures govern review of defendant's commitment. Defendant's sentence remains the same: three consecutive one-to-fifteen year terms. It is only the place at which those terms are served that may

change as a result of the placement review process.

5. The fact that a transfer may never occur does not render this an advisory opinion. The only issue for judicial determination is which statute controls. Therefore, this court may properly review the trial court's resolution of that question so the transfer review process can proceed.

statute governed. The statute governing the placement process at that time was the amended version, Utah Code Ann. § 77–16a–203 (Supp.1992).

■ Accordingly, we hold that the trial court was correct in concluding that Utah Code Ann. § 77–16a–203 (Supp.1992) governs defendant's possible transfer to the Utah State Prison. The placement decision is separate and distinct from the sentencing determination, which was completed in 1990. As such, application of the 1992 statute is in no way retroactive because the placement controversy did not arise until the end of 1992.[6]

## CONCLUSION

The trial court's order is final for the limited purpose of this appeal. The trial court correctly concluded that Utah Code Ann. § 77–16a–203 (Supp.1992) governs defendant's possible transfer to the Utah State Prison, and that ruling does not constitute a retroactive application of the statute. Therefore, the order of the trial court is affirmed, and review of defendant's placement should proceed under section 77–16a–203.

DAVIS and GREENWOOD, JJ., concur.

---

**6.** Furthermore, even if we accepted defendant's characterization that this is a retroactive application, his claim would not violate the prohibition against retroactive application absent legislative expression to the contrary. *See* Utah Code Ann. § 68–3–3 (1993). We have consistently recognized an exception to that rule where statutory amendments are procedural, rather than substantive. *See, e.g., State v. Abeyta*, 852 P.2d 993, 995 (Utah 1993) (per curiam); *Washington Nat'l Ins. Co. v. Sherwood Assoc.*, 795 P.2d 665, 667–70 (Utah App.1990). Procedural amendments are those which affect only the judicial machinery for enforcing rights or clarify the legislature's previous intent, *Washington Nat'l*, 795 P.2d at 668 n. 5, and do not "enlarge, eliminate, or destroy vested rights." *Smith v. Cook*, 803 P.2d 788, 792 (Utah 1990). The statutory change at issue in this case is procedural; it merely dictates the process by which a review evaluation of a mentally retarded offender takes place, and it in no way affects any vested right of defendant's. Therefore, were we to deem the application of the 1992 statute retroactive, we would nonetheless affirm the trial court's order because of the statute's procedural nature.

Finally, were we to reach defendant's argument that the retroactive application prejudiced him, we would likewise affirm the trial court. Defendant claims that the old statute afforded him the right to a discharge from custody if the Training School decided it was no longer appropriate to house him there, and he concedes that, unless that interpretation is correct, he is better off under the new statute. We do not read the old statute as equating discharge with release into society, particularly since the remainder of its language clarifies that upon the Training School's desire to discharge a defendant, "[t]he Board of Pardons shall direct that the defendant serve any or all of the unexpired term of the sentence at the state prison, or place the defendant on parole." Utah Code Ann. § 77–16a–8(4) (Supp.1990). Thus, application of the new statutory scheme in no way prejudices defendant.